FILED – USDC ALSD
AUG 3 '26 PM3:39

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| Allison-kathleen LeBlanc<br>In Propria Personna, Pro se Plaintiff<br><br>v.<br>William Tyndall Jr.; GPS Land Company LLC; William Austin Tyndall; Dewey McGowan; MIS Inc.; Deputy Logan Williams (individually and in his official capacity); Deputy Dylan Cash (individually and in his official capacity); Deputy Foster (individually and in his official capacity); Deputy Grayson Gross (individually and in his official capacity); and Fictitious Deputies John Doe A-Z (individually and in their official capacities);<br>*Defendants*. | Case No: 26-cv-310-JB-MU<br><br>**COMPLAINT FOR 42 USC § 1983 VIOLATION OF RIGHTS UNDER COLOR OF LAW, MALICIOUS PROSECUSION, CIVIL CONSPIRACY, DEFAMATION, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br><br>**JURY TRIAL DEMANDED** |

**Complaint for 42 USC §1983 Violation of Rights Under Color of Law, Malicious Prosecution, Civil Conspiracy, Defamation, and Intentional Infliction of Emotional Distress**

*"If only one person says that he has seen someone do something wrong, that is not enough. There must be at least two or three people who saw the sin. Then the judge may say that the person is guilty. Somebody may accuse another person because he wants to hurt him. He tells lies against him. Then both of them must stand in front of the judges that the Lord has chosen. Those are the priests and the judges who have authority at that time. The judges must be careful to discover who is telling the truth. The person may be speaking lies against another Israelite to accuse him. If he is telling lies, you must punish him in the same way that he wanted to punish the other Israelite. You must remove evil things like this from among yourselves. Then everyone else will hear what has happened. They will be afraid to do any more evil things like that."*
**Deuteronomy 19:15-20**

## I. Parties

**Plaintiff**: Allison-kathleen LeBlanc is an American citizen domiciled in Baldwin County, Alabama.

> Allison-kathleen LeBlanc
> PO Box 492
> Robertsdale, Baldwin County, Alabama 36567
> 601-842-2035
> allisonkleblanc@proton.me

**Defendant #1**: William Tyndall Jr. is a resident of Alabama or Mississippi. He is the Owner of GPS Land Company LLC.

> William C. Tyndall Jr.
> 636 E 22nd Ave
> Gulf Shores, Baldwin County, Alabama 36542

**Defendant #2:** GPS Land Company LLC is a limited liability company formed in Mississippi that has registered with the Alabama Secretary of State and doing business in Alabama.

> GPS Land Company LLC
> Registered Agent: William C. Tyndall Jr.
> 636 E 22nd Ave
> Gulf Shores, Baldwin County, Alabama 36542

**Defendant #3:** William Austin Tyndall is a resident of Alabama and is an associate of GPS Land Company LLC and MIS, Inc.

> William Austin Tyndall
> 636 E 22nd Ave
> Gulf Shores, Baldwin County, Alabama 36542

**Defendant #4:** Dewey McGowan is a resident of Mississippi. He is the owner of MIS, Inc., a Mississippi Corporation.

> Dewey McGowan
> 636 E 22nd Ave
> Gulf Shores, Baldwin County, Alabama 36542

**Defendant #5:** MIS, Inc. is a Mississippi Corporation registered with the Alabama Secretary of State and doing business in Alabama.

> MIS, Inc., A Mississippi Corporation
> Registered Agent: Dewey McGowan
> 636 E 22nd Ave
> Gulf Shores, Baldwin County, Alabama 36542

**Defendant #6:** Deputy Logan Williams (individually and in his official capacity) was at all times relevant employed by the Baldwin County Sheriff's Office (BCSO) and acting under color of state law.

> Deputy Logan Williams
> 320 N Hoyle Ave
> Bay Minette, Baldwin County, Alabama 36507

**Defendant #7:** Deputy Dylan Cash (individually and in his official capacity) was at all times relevant employed by the Baldwin County Sheriff's Office (BCSO) and acting under color of state law.

> Deputy Dylan Cash
> 320 N Hoyle Ave
> Bay Minette, Baldwin County, Alabama 36507

**Defendant #8:** Deputy Grayson Gross (individually and in his official capacity) was at all times relevant employed by the Baldwin County Sheriff's Office (BCSO) and acting under color of state law.

> Deputy Grayson Gross
> 320 N Hoyle Ave
> Bay Minette, Baldwin County, Alabama 36507

**Defendant #9:** Deputy Foster (individually and in his official capacity) was at all times relevant employed by the Baldwin County Sheriff's Office (BCSO) and acting under color of state law.

> Deputy Foster
> 320 N Hoyle Ave
> Bay Minette, Baldwin County, Alabama 36507

**Fictitious Defendants:** Fictitious Agents of MIS, Inc., GPS Land Company, LLC, and John Doe Deputies A through Z represent currently unidentified law enforcement personnel or co-conspirators whose true identities will be substituted upon discovery.

## II. Jurisdiction and Venue

1. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983.

2. This Court has supplemental jurisdiction over the Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because they are so related to the federal civil rights claims that they form part of the same case or controversy.

3. Venue is proper in the Southern District of Alabama pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, omissions, and unlawful acts giving rise to the claims occurred in Baldwin County, Alabama, within this judicial district.

## III. Factual Allegations

**The Void Eviction and Fabricated Trespass Reports**

4. Before June 20, 2024, Attorney Brian Britt, who represented MIS, Inc. in a lawsuit against the Plaintiff and her family (CV- 2024-901333), obtained a void writ of possession without a final order. (**Exhibit A** – Docket Sheet from CV-2024-901333)

5. On June 20, 2024, Defendants Dewey McGowan, William Tyndall Jr., and MIS, Inc. used the Baldwin County Sheriff's Office deputies as their personal hit squad to evict Plaintiff and her family from their home at 26451 Baldwin Beach Express, Robertsdale, Alabama, using a void writ executed without notice at gunpoint for the maximum terror effect.

6. Since 2015, Plaintiff legally rented a neighboring field at 26397 Baldwin Beach Express from property owner Christine Morrison to serve as pasture for her livestock. The livestock remained after the illegal eviction.

7. On the evening of June 20, 2024, Jennifer Shelton—an individual previously hired by LeBlanc to care for her livestock—entered Ms. Morrison's field to remove LeBlanc's animals of her own accord, along with an unknown neighbor.

8. On or about June 21, 2024, Defendant William Tyndall Jr. hired Kathy Stevens to illegally remove LeBlanc's livestock, stating that he had control of them now. Upon her arrival at 26397 Baldwin Beach Express, Stevens found the animals gone and Jennifer Shelton picking up the remnants from the eviction along the roadside.

9. Defendant Tyndall Jr. spoke with Shelton over the phone, and she told him that she moved the animals and there wasn't anything he could do about it because it wasn't his property.

10. Defendant William Tyndall Jr. or his agents contacted the Baldwin County Sheriff's Office and filed a false report of trespass, claiming that Defendant William Tyndall Jr. owned the field rented by Plaintiff, and that Plaintiff had unlawfully entered the land and removed animals.

11. Defendant William Tyndall Jr. made these criminal allegations without eye-witnesses, photographic evidence, or proof of property boundaries.

## Exculpatory Evidence and the Law Enforcement "Investigation"

12. Shelton explicitly stated to Defendant William Tyndall Jr. (via phone) and Kathy Stevens that *she* (Shelton) removed the animals, completely exculpating LeBlanc.

13. Shelton stated to the investigating deputies that she moved the animals and that she had told Defendant William Tyndall Jr. that she moved the animals.

14. Deputy Williams spoke with the true property owner, Ms. Morrison, via phone. Ms. Morrison indicated she was not immediately available to show the property line, but she thought the chicken coops were not on her property, which was incorrect.

15. Despite conflicting statements regarding property ownership, no investigating BCSO deputy reviewed official, publicly available property boundary maps from the Baldwin County Department of Revenue showing that the land belonging to 26451 Baldwin Beach Express ended just south of the driveway at the road and just past the barn at the rear of the property.

16. It was suggested that someone check Ownerly for the property boundaries, but deputies chose not to verify the property boundaries.

17. Body camera footage captured Defendant William Tyndall Jr. admitting to Deputy Williams, Deputy Gross, and Deputy Cash that *"Jennifer said that she moved the animals."* (Gross body camera)

18. Despite possessing direct knowledge that Plaintiff did not commit the alleged acts, Deputy Williams told John Doe Deputy A that "Allison said she moved the animals," intentionally altering the exculpatory statement.

19. Witness Kathy Stevens recorded her statement for Deputy Williams accurately writing "Jennifer said she took the animals."

20. Conversely, Deputy Gross fabricated the official ARBS report by recording that *"Allison said she took the animals."***(Bodycamera)**

## Malicious Prosecution and Issuance of the First Warrant

21. On July 8, 2024, Defendant William Tyndall Jr. was deposed, and maliciously changed his narrative to match the fabricated law enforcement reports, stating *"Allison said she took the animals."*

22. Defendant William Tyndall Jr. swore out and signed a criminal complaint before Judge William Scully, causing an arrest warrant to be issued against Plaintiff without probable cause, without an eye witness, and without any actual evidence.

23. Defendant Dewey McGowan, agent of MIS, Inc., was aware the claims were fabricated and refused to sign the complaint, yet he maliciously chose not to correct the record or inform the court of the false statements.

24. Plaintiff LeBlanc had no communication with any of the defendants and was completely unaware of the trespass allegations or the outstanding warrant.

## The Unlawful July 30 Arrest and Unconstitutional Detention

25. On July 30, 2024, Plaintiff LeBlanc, along with her husband and children, were tending to the chickens and building a dog enclosure inside the pasture rented from Ms. Morrison.

26. Defendant William Austin Tyndall reported a second, false criminal trespass allegation to the BCSO.

27. BCSO deputies arrived at the scene and arrested Plaintiff.

28. Lauren Timphony, daughter of the property owner Christine Morrison, showed the exact property lines to the deputies proving LeBlanc was lawfully on Ms. Morrison's land.

29. Disregarding the clarified property boundaries and lacking probable cause, Deputies Cash and Foster continued the arrest of Plaintiff on Ms. Morrison's land despite the clearly false allegation.

30. Deputies Cash and Foster placed Plaintiff in torture cuffs, causing physical pain and injury, and removed her from her family with the intent to intimidate her and her family and to hold her captive in an isolated place.

31. At approximately 4:30 PM, Deputy Cash drove Plaintiff from Ms. Morrison's field to the driveway of 26451 Baldwin Beach Express, staging a highly public arrest on the shoulder of a high-traffic expressway to cause maximum public humiliation.

32. Deputy Foster transported Plaintiff to the Baldwin County Correction Center, maintaining her in torture cuffs causing shoulder and wrist pain.

33. At the detention facility, BCSO personnel twice subjected Plaintiff to radiological imaging without her knowledge or lawful consent. Despite the 2 scans, personnel subjected her to a strip search for maximum psychological effect.

34. BCSO personnel used LeBlanc's lawful concealed carry permit photograph as an unapproved mugshot to post on their website, delaying formal booking until 2:30 AM on July 31, 2024.

35. Deputy John Doe B repeatedly denied Plaintiff's constitutional right to counsel, holding her in communicative isolation for nine (9) hours until after the 2:30 AM booking.

36. Plaintiff was released on bond later that morning under restrictive conditions that severely impacted her freedom, including travel bans prohibiting her from leaving the state of Alabama.

37. In or around August 2024, Plaintiff met with Defendant Dewey McGowan and Attorney Jessica Breanne Zarzour to discuss a possible settlement in MIS, Inc.'s lawsuit. McGowan stated that he refused to sign the complaint along with Defendant Tyndall. Zarzour stated that she would only intervene on the Plaintiff's behalf with the Assistant District Attorney in the criminal

case if Plaintiff signed the settlement agreeing not to bring any further lawsuits against Defendant Dewey McGowan, MIS, Inc., and any of its associates including Defendant William Tyndall Jr., using the false criminal allegations for extortion.

38. Defendant McGowan stated that he was feeding Plaintiff's chickens and cats, effectively luring them away from Christine Morrison's land and onto his land. Plaintiff emailed Attorney Zarzour to tell him to stop.

39. After deciding not to relinquish her right to seek recourse against Defendant William Tyndall Jr.'s false allegations, Plaintiff emailed Attorney Zarzour to set up a time to recover her personal property from 26451 Baldwin Beach Express. Zarzour refused to allow the recovery of any personal property unless Plaintiff agreed to the settlement again showing Tyndall and McGowan's intent to use property and the false arrest to coerce Plaintiff into a settlement.

40. Plaintiff LeBlanc was subjected to a malicious six-month criminal trial process without indictment.

41. On January 6, 2025, the criminal trial concluded. All subpoenaed witnesses—including William Tyndall Jr., Dewey McGowan, Kathy Stevens, and Deputies Williams, Gross, Cash, and Foster—maliciously failed to appear in court.

42. Judge Thomason dispatched the courtroom bailiff, Deputy John Doe C, to the Sheriff's Office to retrieve the missing subpoenaed deputies. Unknown deputies retaliated by reactivating the original, false warrant, and upon returning, Deputy C attempted to re-arrest Plaintiff inside the courtroom for the same false charge.

43. Judge Thomason intervened, ordered Deputy C to stop the unlawful arrest, and permanently deactivated the false warrant. Plaintiff was found **not guilty** and Judge Thomason noted that Prosecution's so-called witnesses failed to appear.

44. On or around April 15, 2025, Plaintiff witnessed Defendant William Austin Tyndall at the 26451 Baldwin Beach Express Property. He had moved the chicken coop from Ms. Morrison's field and was loading it onto a trailer which appeared to be one that Plaintiff had bought for her husband which Defendant MIS, Inc. had converted. Plaintiff contacted Defendant's Attorney Zarzour regarding the chicken coop and the trailer. She stated that Tyndall claimed to own the trailer and she did not address the theft of the chicken coop. At a later date, she stated that Defendant McGowan was still

trying to locate the coop and that he would return it, my rocking chairs, schoolhouse, and dog kennels only if I agreed to their settlement releasing McGowan, Tyndall, and their associates from responsibility in this malicious prosecution.

## IV. Causes of Action

### Count I: 42 U.S.C. § 1983 - Fourth Amendment Violations
### (False Arrest & False Imprisonment)

### *(Against Deputies Williams, Cash, Foster, Gross, and Fictitious Deputies)*

45. Defendants arrested and detained Plaintiff LeBlanc without legal justification, without a valid warrant supported by probable cause, and in complete disregard of clear exculpatory property and witness evidence.

46. Defendant Williams maliciously or acting with extreme negligence, changed Tyndall's claim from "Jennifer moved the animals" to "Allison moved the animals". Defendants Cash and Gross witnessed the name change and either allowed it maliciously or in extreme negligence voiding qualified immunity.

### Count II: 42 U.S.C. § 1983 - Fourteenth Amendment Violations
### (Unconstitutional Conditions of Confinement)

### *(Against Deputy Foster, Deputy E, and Fictitious Correctional Staff)*

47. Defendants subjected the Plaintiff to arbitrary strip searches, unauthorized medical X-rays without consent, and withheld her right to access counsel or communication by holding her in communicative isolation until 2:30 AM for a total of nine hours.

48. Defendant Foster, knowing that Tyndall's claim that he owned the property at 26397 was false, continued the arrest of the Plaintiff allowing her to be x-rayed without her knowledge and eventually strip searched showing malicious intent or extreme negligence voiding qualified immunity.

49. John Doe Deputy B denied Plaintiff's requests for a phone call to contact counsel telling her to "sit down and stop bothering him" for over 9 hours.

This is a clear and well-established violation of Plaintiff's rights voiding qualified immunity.

## Count III: 42 U.S.C. § 1983 - Fourth Amendment (Excessive Force)

### *(Against Deputies Cash and Foster)*

50. Defendants applied "torture cuffs" to a non-resistant, compliant citizen, while arresting her on property where she was legally and lawfully entitled to be, inflicting unnecessary physical pain and distress without operational necessity.

51. Defendants were shown the correct property boundaries that rendered the warrant void. Deputy Cash was present when the false allegation was made and when Tyndall blamed Jennifer Shelton before he falsely blamed the Plaintiff. This shows malicious intent or extreme negligence which voids qualified immunity.

## Count IV: 42 U.S.C. § 1983 - Malicious Prosecution

### *(Against All Individual and Corporate Defendants)*

52. Private and public defendants conspired to initiate and continue a baseless criminal prosecution against Plaintiff using knowingly fabricated statements, which *successfully terminated in her favor via a full acquittal on January 6, 2025.*

53. Statements made by Defendant Williams, reports filed by Defendant Gross, and the actions of Defendants Cash and Foster exhibit malicious intent toward the Plaintiff or extreme negligence in the investigation of Defendant William Tyndall Jr.'s false allegations voiding qualified immunity.

## Count V: Alabama State Law - Civil Conspiracy

### *(Against All Defendants)*

54. Private individuals, corporate actors, and law enforcement deputies combined their efforts to complete an unlawful purpose—namely, the unlawful eviction, false arrest, and fraudulent prosecution of Plaintiff.

55. Defendants William C. Tyndall Jr., William Austin Tyndall, Dewey McGowan, Deputy Logan Williams, Deputy Grayson Gross, Deputy Dylan Cash, and Deputy Foster were all subpoenaed to appear at the Criminal trial of Plaintiff. None of the Defendants appeared because they knew they would be giving false testimony.

56. When all Defendants failed to appear to testify, Judge Thomason sent the Baliff/Deputy John Doe C to the Sheriff's Office to bring them to court. Deputy John Doe C or other BCSO personnel reactivated the false warrant, and Deputy John Doe C returned to court and attempted to arrest the Plaintiff again knowingly with a false warrant negating qualified immunity and showing extreme malice toward Plaintiff. This interaction was recorded by the Plaintiff's court reporter.

## Count VI: Alabama State Law - Defamation (Libel and Slander Per Se)

### *(Against William Tyndall Jr., William Austin Tyndall, Deputy Logan Williams, Deputy Grayson Gross, and Fictitious John Doe Deputy D who used Plaintiff's Concealed Carry photo as a mug shot)*

57. Defendants published false accusations to third parties, in official public records, and on the internet accusing Plaintiff of a crime (criminal trespass) with no probable cause and no witnesses, severely damaging her reputation.

58. Defendants used an official Sheriff's Office photo intended for a concealed carry permit only as a public photo for a false purpose.

## Count VII: Alabama State Law - Intentional Infliction of Emotional Distress (Tort of Outrage)

### *(Against All Defendants)*

59. The defendants' coordinated conduct—fabricating statements, ignoring confessions, executing a public expressway arrest, subjecting Plaintiff to invasive searches, slandering her publicly on the internet, using her Concealed Carry photo as an arrest photo, and attempting a courtroom re-

arrest after acquittal, all for the purpose of intimidating Plaintiff and her family and preventing her from adequately representing herself and her family's interests in court—is so extreme and outrageous as to go beyond all possible bounds of decency.

## V. Prayer for Relief

Wherefore, Plaintiff Allison LeBlanc respectfully requests that this Court enter judgment in her favor and against all Defendants, awarding the following relief:

- **Compensatory Damages**: Defendants' actions resulted in severe anxiety for Plaintiff and her young children and handicapped mother, in front of whom she was arrested. Her nursing career was damaged, eventually causing her to leave the profession. She went from a six-figure salary to poverty level; from dining out to standing in bread lines; from privately paid healthcare to Medicaid for her children; from travelling to hiding in her home for fear of the same abuse of power. She was prevented by conditions of her bond from spending the holidays with her brothers, sisters-in-law, nieces, and nephews in Mississippi and Louisiana. Her good name was slandered and her 30-year nursing career demolished. For physical pain, emotional trauma, reputational damage, legal fees, and severe loss of liberty, Plaintiff requests the following Compensation:
  - From William Tyndall Jr. for initiating the false claims to intentionally damage Plaintiff and her career over a house flip, $500,000 to begin to replace her lost income, investments, and savings, and re-establish her career;
  - From Dewey McGowan and William Austin Tyndall, $100,000 each for assisting in the false claims or refusing make it right;
  - From Deputy Logan Williams, Deputy Grayson Gross, Deputy Dylan Cash, Deputy Foster, and from fictitious John Doe Deputies in their official capacities, a handwritten apology from each; a personal, specific apology from the department printed in The Baldwin Times; retraining in Constitutional law enforcement in a program approved by Allison LeBlanc which she can attend with them; establishing a program to educate children in Baldwin County Schools about Constitutional law enforcement with each officer appearing 2 times each year for 5 years (10 opportunities each to teach about Constitutional law enforcement);

- **Punitive Damages**: Against all defendants in their individual capacities and against the corporation and LLC for conduct that was malicious, oppressive, and in reckless disregard of federal constitutional rights, Plaintiff requests punitive damages in the following amounts:

  o From William Tyndall Jr. for using the BCSO deputies as his personal hit squad to terrorize Plaintiff and her family, $500,000: $250,000 to Allison LeBlanc and $250,000 for Attorney Brenton C. McWilliams to establish a trust to provide emergency housing for displaced families resulting from overzealous land developers;

  o From Deputy Logan Williams, Deputy Grayson Gross, Deputy Dylan Cash, Deputy Foster, and Fictitious John Doe Deputies A-Z, in their individual capacities, $100,000 each: $50,000 to Allison LeBlanc for the terror caused to her and her family and $50,000 to a trust to be established by Attorney Brenton C. McWilliams with Allison LeBlanc as trustee to provide legal assistance to Baldwin County residents fighting Civil Rights abuses;

  o For Dewey McGowan to pay for the services of Attorney Jessica Breanne Zarzour to aggressively handle the expungement of Plaintiff's Criminal record and deletion of all online databases that contain or may contain her arrest records and to monitor and remove any future references to this criminal record;

  o From MIS, Inc. and GPS Land Company, for the egregious conduct of their agents, the entirety of the property located at 26451 Baldwin Beach Express, Robertsdale, Alabama with the legal description of:

    Commencing at the Southeast corner of the Northeast Quarter of Section 16, Township 5 south, Range 4 East, run South 30 feet; thence run West 30 feet to a Point of Beginning on the West right-of-way of Baldwin County Road NO. 83; thence continue West 485 feet; thence run South 400 feet; thence run East 485 feet to the West right-of-way of Highway No. 83; thence run North 400 feet along said right-of-way to the Point of Beginning, LESS AND EXCEPT that portion of subject property conveyed to Baldwin County as a portion of Baldwin County Highway 83 recorded in instrument Number 1181392.

    This property is to be made free and clear of any and all encumbrances and be signed over to Kathy B. Heindl.

- **Attorneys' Fees and Costs**: Pursuant to 42 U.S.C. § 1988 and applicable state laws. Although Plaintiff has been pro se, she will have court costs and service fees due at the end of litigation. She has also endured costs for internet connection, legal writing assistance, postage for dodged service, printing costs, and material duplication.

- Any alternative, equitable, or further relief this Court deems just and proper.

## VI. Certification and closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A. I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

## A JURY TRIAL IS DEMANDED.

Respectfully signed and submitted this 30th of July 2026,

/s/ Allison Kathleen: LeBlanc, agent and beneficiary

ALLISON KATHLEEN HEINDL LEBLANC, principal and trust
*Plaintiff Pro Se*

USPS TRACKING #

9590 9402 9037 4122 0498 81

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States**
**Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

9590 9402 9037 4122 0498 81

2. Article Number *(Transfer from service label)*

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form **3811**, July 2020 PSN 7530-02-000-9053

Domestic Return Receipt



## Certified Mail service provides the following benefits:

- A copy of this portion of the Certified Mail label
- A unique identifier for your mailpiece
- Electronic verification of delivery or attempted delivery.
- A record of delivery (including the recipient's signature) that is retained by the Postal Service™ for a specified period.

### Important Reminders:

- You may purchase Certified Mail service with First-Class Mail®, First-Class Package Service®, or Priority Mail® service.
- Certified Mail service is *not* available for International mail.
- Insurance coverage is *not* available for purchase with Certified Mail service. However, the purchase of Certified Mail service does not change the insurance coverage automatically included with certain Priority Mail items.
- For an additional fee, and with a proper endorsement on the mailpiece, you may request the following services:
  - Return receipt service, which provides a record of delivery (including the recipient's signature). You can request a hardcopy return receipt or an electronic version. For a hardcopy return receipt, complete PS Form 3811, *Domestic Return Receipt;* attach PS Form 3811 to your mailpiece;

to an electronic return receipt, see a retail associate for assistance. To receive a duplicate return receipt for no additional fee, present this USPS®-postmarked Certified Mail receipt to the retail associate.

  - Restricted delivery service, which provides delivery to the addressee specified by name, or to the addressee's authorized agent.
  - Adult signature service, which requires the signee to be at least 21 years of age (not available at retail).
  - Adult signature restricted delivery service, which requires the signee to be at least 21 years of age and provides delivery to the addressee specified by name, or to the addressee's authorized agent (not available at retail).

- To ensure that your Certified Mail receipt is accepted as legal proof of mailing, it should bear a USPS postmark. If you would like a postmark on this Certified Mail receipt, please present your Certified Mail item at a Post Office™ for postmarking. If you don't need a postmark on this Certified Mail receipt, detach the barcoded portion of this label, affix it to the mailpiece, apply appropriate postage, and deposit the mailpiece.

**IMPORTANT: Save this receipt for your records.**

PS Form **3800,** January 2023 *(Reverse)* PSN 7530-02-000-9047



**UNITED STATES POSTAL SERVICE.**

Retail

## US POSTAGE PAID

E

**$35.90**

Origin: 36532
07/31/26
0129300532-11

### PRIORITY MAIL EXPRESS®

ALLISON LEBLANC
PO BOX 492
ROBERTSDALE AL 36567-0492
(601) 842-2035

0 Lb 4.90 Oz

**RDC 07**

NO WEEKEND DELIVERY

SCHEDULED DELIVERY DAY: 08/03/26 06:00 PM

C005

SHIP
TO:



(251) 690-2371
US DISTRIC
US DISTRICT FOR THE SOUTHERN DISTR
155 SAINT JOSEPH ST
MOBILE AL 36602-3914

USPS TRACKING® #



9570 1117 6793 6212 6947 83

---

**UNITED STATES POSTAL SERVICE®** | **PRIORITY MAIL EXPRESS®**



EI 983 831 839 US

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)    PHONE (601) 842-2035

Allison LeBlanc
PO Box 492
Robertsdale, AL 36567

**DELIVERY OPTIONS (Customer Use Only)**

☒ **SIGNATURE REQUIRED** Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

**Delivery Options**

☒ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
   *Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)    PHONE (251) 690-2371

US District Court for the Southern
District of Alabama
155 Saint Joseph St.
Mobile, Alabama
36602 _ _ _ _ _ _

**PAYMENT BY ACCOUNT (if applicable)**
Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**

| ☐ 1-Day | ☐ 2-Day | ☐ Military | ☐ DPO |
|---|---|---|---|
| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage $ | |
| Date Accepted (MM/DD/YY) | Scheduled Delivery Time ☐ 6:00 PM | Insurance Fee $ | COD Fee $ |
| Time Accepted ☐ AM ☐ PM | | Return Receipt Fee $ | Live Animal Transportation Fee $ |
| Special Handling/Fragile $ | Sunday/Holiday Premium Fee $ | Total Postage & Fees $ | |
| Weight ☐ Flat Rate lbs. ozs. | Acceptance Employee Initials | | |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature |
|---|---|---|
| Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature |

For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
$100.00 insurance included.

**PEEL FROM THIS CORNER**

LABEL 11-B, NOVEMBER 2023    PSN 7690-02-000-9996

ber 2023
9 1/2



PAPER POUCH

recycle.info

 

**UNITED S POSTAL SE**